230 F.3d 14 (2nd Cir. 2000)
 ROBERT SIMS, Plaintiff-Appellant, v.
CHRISTOPHER ARTUZ, Superintendent; PHILIP COOMBE, JR., Commissioner; CYRIL COEFIELD, Deputy of Security; SYLVIA LAGUNA, Director of Inmate Grievance Program; LORETTE KLEIN, Ph.D., Forensic Unit Chief; DONALD SELSKY; PAUL DALEY, Psychotherapist; SKOLLAR STANLEY, Psychotherapist; RICHARD C. SURLES, Ph.D., Commissioner; JOHN J. TIERNEY, Correction Sergeant; RICHARD B. MARKIE, Correction Sergeant; DANIEL J. CONNOLLY, Correction Lieutenant; GEORGE S. SCHNEIDER, Correction Captain; VIRGINIA BLAETZ, Senior Correction Counselor; THOMAS J. LEVANDUSKI, Senior Correction Counselor; GAYLE A. HAPONIK, Correction Stwd; ROBERT A. FOUNTAIN, Correction Officer; JOHN S. HUPKOWICZ, Correction Officer; CHERYLANN HARDING, Correction Officer; ROBERT R. TOMPKINS, Correction Officer; CHARLES R. PRENTICE, Correction Officer; GERALD O. SAWYER, Correction Officer; ROBERT BJ. SMITH, Correction
Counselor; WILLIAM F. HUTCHINSON, Correction Counselor; JOHN & JANE DOES, 1 11, individual and in their official capacity, Defendants-Appellees.
 Docket No. 97-2674
August Term, 1999
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Submitted: April 13, 2000
Decided: October 11, 2000
 
 Appeal from an order of the United States District Court for the Southern District of New York, Loretta A. Preska, Judge, dismissing complaint brought under 42 U.S.C. §1983 alleging that defendants used or condoned the use of excessive force in violation of plaintiff's Eighth Amendment rights, and that certain defendants violated his right to due process in prison disciplinary hearings.
 Vacated and remanded in part. [Copyrighted Material Omitted]
 ROBERT SIMS, Attica, New York, Plaintiff-Appellant pro se.
 DENNIS C. VACCO, Attorney General of the State of New York, New York, New York, (John W. McConnell, Deputy Solicitor General, Thomas D. Hughes, Assistant Solicitor General, Marion R. Buchbinder, Assistant Attorney General, New York, New York, of counsel), for Defendants-Appellees.
 Before: NEWMAN, KEARSE, and CABRANES, Circuit Judges.
 KEARSE, Circuit Judge:
 
 
 1
 Plaintiff pro se Robert Sims, formerly a prisoner at New York State's Green Haven Correctional Facility ("Green Haven"), has appealed from a judgment of the United States District Court for the Southern District of New York, Loretta A. Preska, Judge, dismissing his amended complaint ("complaint") brought under 42 U.S.C. §1983 (1994), alleging principally that defendants Green Haven officials (1) used or condoned the use of excessive force against him in violation of his rights under the Eighth Amendment to the Constitution, and (2) violated his due process rights in connection with disciplinary proceedings that resulted in excessive special confinement. The district court dismissed the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, ruling principally that the force alleged was not sufficient to violate the Eighth Amendment and that the complaint did not describe conditions of confinement sufficiently severe or atypical to support the due process claims. For the reasons that follow, we vacate so much of the judgment as dismissed those claims, and we remand for further proceedings.
 
 I. BACKGROUND
 
 2
 Sims's complaint, the allegations of which must be taken as true on review of a Rule 12(b)(6) dismissal, focused on events alleged to have occurred while Sims was incarcerated at Green Haven between February and September 1995. To the extent pertinent to this appeal as it stands following this Court's order of June 18, 1998, dismissing other parts of the appeal, Claims 1, 6, and 9 of the complaint alleged principally that on three occasions, certain of the defendant corrections officers used excessive force against Sims; in addition, Claims 1 7 alleged that Sims's due process rights were violated at several disciplinary hearings, leading to inordinately long sentences of special confinement.
 
 A. The Excessive-Force Claims
 
 3
 According to Claim 1 of the complaint, on February 21, 1995, while in a prison elevator, correction officer defendant John S. Hupkowicz and two "John Doe" defendants "punched [Sims] in the ribs, collar, upper right arm and skull" (Complaint at 21, ¶1); thereafter, two of the officers "pulled on [his] handcuffs" (id. ¶3). As a result, Sims suffered "serious injuries to his ribs, collar, arm, skull and teeth." (Id. at 22, ¶6.) Defendants John J. Tierney, Cyril Coefield, Paul Daley, and Skollar Stanley, along with a "Jane Doe" defendant, witnessed the assault but failed to intervene. (Id. at 21, ¶4.) Claim 6 of the complaint alleged that on July 12, Tierney and a "John Doe" defendant punched Sims in the face four times and pulled on the chains locking his arm (id. at 33, ¶1), causing injury to his face and hands (id. at 34, ¶8). Claim 9 of the complaint alleged that on August 29, several "Doe" defendants "punched and kicked [Sims] in the rib cage, skull, knee cap, back bone, sacrum, base of spine, collar bone, [and] teeth," and "pull[ed him] by his penis." (Id. at 39, ¶1.) The August 29 beating caused Sims to seek "medical care for his eye, leg, hand and penis." (Id. at 68, ¶4.)
 
 
 4
 The complaint alleged that each assault was "mali[]cious[] and sadis[t]ic[]" (id. at 45, ¶1 (February 21 assault); id. at 60, ¶1 (July 12 assault); see id. at 67, ¶1 (August 29 assault)), and that each was "without need or provocation" (id. at 45, ¶3 (February 21 assault); id. at 60, ¶2 (July 12 assault); id. at 67, ¶2 (August 29 assault)). It alleged that the failures of Tierney, Coefield, Daley, Stanley, and a "Doe" to curb the known pattern of abuses perpetrated by Hupkowicz and the "Does" constituted deliberate indifference. (Id. at 46, ¶4.)
 
 B. The Due Process Claims
 
 5
 After each of the above assaults, one or more defendants filed misbehavior reports against Sims, and with regard to the first two incidents, Sims alleged that he was denied due process in connection with the ensuing disciplinary hearings. Claim 1 of the complaint alleged that in connection with a March 8 hearing into the February 21 incident, defendant Robert BJ. [sic] Smith, who prepared a misbehavior report, did not interview or even obtain the names of Sims's witnesses. At the hearing, defendant Daniel J. Connolly, the hearing officer, refused to allow Sims to present witnesses and denied him the right to "comment on the charges and evidence being used against him." (Complaint at 22, ¶8.) Further, although the elevator in which the February 21 beating occurred was equipped with "a monitoring system that record[ed] both picture and sound" (id. at 21, ¶2), Connolly refused to allow Sims to present the videotapes of the incident. Connolly found Sims guilty and sentenced him to one year in Green Haven's Special Housing Unit ("SHU").
 
 
 6
 Claim 6 of the complaint alleged that Connolly also presided over a July 26 hearing concerning the misbehavior report filed after the July 12 incident. The complaint alleged that Connolly refused to allow Sims to call witnesses or present evidence, excluded him from part of the hearing (Complaint at 34, ¶5), and "tamper[ed] with the hearing tapes" (id. ¶6). Connolly found Sims guilty and sentenced him principally to one year in SHU.
 
 
 7
 In addition, the complaint alleged that several disciplinary hearings were held with respect to unrelated misbehavior reports, and that Sims was denied due process at those hearings as well. Claim 2 alleged that at a March 3 disciplinary hearing, Coefield as hearing officer refused to allow Sims to present witnesses. Coefield found Sims guilty of the charges against him and sentenced him to 60 days' confinement in SHU.
 
 
 8
 Claim 3 alleged that at a July 20 hearing, the hearing officer was defendant Gayle A. Haponik and that Haponik ceased to record part of Sims's questioning, did not allow Sims to present witnesses, and did not allow him to comment on the charges and evidence against him. Haponik found Sims guilty and sentenced him principally to 60 days in SHU.
 
 
 9
 Claim 4 alleged that with respect to a July 12 hearing, Smith refused to allow Sims to obtain documents necessary for the hearing. The hearing officer was defendant Virginia Blaetz, who, inter alia, refused to allow Sims to present witnesses or videotape evidence, excluded him from part of the hearing, and did not permit him to comment on the charges and evidence against him. Blaetz found Sims guilty and sentenced him to, inter alia, 180 days in SHU.
 
 
 10
 Claim 5 alleged that at another July 12 hearing, hearing officer Coefield refused to allow Sims to present witnesses, failed to record part of the proceedings, and tampered with Sims's videotape evidence. Coefield wrote his decision finding Sims guilty before hearing Sims's defense. He sentenced Sims to, inter alia, 90 days in SHU.
 
 
 11
 Claim 7 alleged that at a July 27 hearing, the hearing officer was defendant Thomas J. Levanduski, who, inter alia, refused to allow Sims to present witnesses, excluded him from part of the hearing, did not permit him to comment on the charges and evidence against him, and tampered with the hearing tapes and videotapes. Levanduski found Sims guilty and sentenced him principally to 90 days in SHU.
 
 
 12
 All of the hearing dispositions were administratively appealed by Sims to defendants Donald Selsky and Philip Coombe, Jr., and were affirmed.
 
 
 13
 In addition to the above claims of excessive force and due process denials in the disciplinary hearings, the complaint alleged, inter alia, that Sims was placed in full restraints from February 21, 1995 to September 1, 1995; was denied the right to exercise in the yard without full restraints; was denied the opportunity to discuss the physical abuse with defendants Christopher Artuz and Lorette Klein, respectively Green Haven's superintendent and its forensics chief, who refused to visit him; was deprived of all of his personal items, such as bedding, toiletries, and writing materials; and was forced to remain naked in his cell from August 29, 1995 to September 1, 1995. The complaint also contained numerous allegations of, inter alia, racial epithets and denials of medical and psychiatric care.
 
 C. The Dismissal by the District Court
 
 14
 Defendants moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted. In a Memorandum and Order dated August 14, 1997 ("Decision"), the district court granted the motion and dismissed the action.
 
 
 15
 With respect to the claims of excessive force, the district court found that Sims asserted "a relatively small number of incidents of use of force" by defendants; that "no single incident [wa]s severe enough to be considered objectively, sufficiently serious" to constitute an Eighth Amendment violation; and that the incidents considered together were not "sufficiently egregious to rise to the level of an Eighth Amendment violation" because the force described in the complaint was not of such a nature as to be considered "repugnant to mankind." Decision at 15 (internal quotation marks omitted).
 
 
 16
 As to the claims that Sims was denied due process in the disciplinary hearings, the district court stated that although prisoners maintain a liberty interest in situations in which confinement imposes "'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life,'" Decision at 17 (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)), Sims had not alleged "any conditions of his confinement that could support a finding that the conditions of his confinement in the SHU were dramatically different from the basic conditions of [his] indeterminate sentence," Decision at 18 (internal quotation marks omitted).
 
 
 17
 In addition, the district court stated that even if the complaint alleged that Sims's confinement to SHU constituted atypical hardship, his claims would nonetheless be dismissed because he did not allege that any of the sentences imposed in the disciplinary hearings had been reversed or invalidated. See Decision at 19 ("'[U]nless the prisoner can demonstrate that the conviction or sentence has previously been invalidated,' any claim for damages under §1983 is not cognizable." (quoting Edwards v. Balisok, 520 U.S. 641, 643 (1997))).
 
 
 18
 The district court also concluded that because the complaint did not allege the violation of a clearly defined right with respect to Sims's confinement in SHU or the manner in which the disciplinary hearings were conducted, Connolly, Coefield, Haponik, Blaetz, Levanduski, Coombe, Smith, and Selsky (collectively the "hearing officer defendants") were entitled to qualified immunity. The complaint was dismissed in its entirety.
 
 II. DISCUSSION
 
 19
 On appeal, Sims moved for the appointment of counsel to represent him. This Court denied the motion and dismissed the appeal as frivolous except with respect to the following issues:
 
 
 20
 (a) whether specified prison guards violated appellant's Eighth Amendment rights by using excessive force on February 21, July 12, and August 29, 1995; (b) whether appellant has alleged atypical and significant conditions of confinement such that he may assert a due process claim against specified hearing officers pursuant to Sandin v. Conn[e]r, [515 U.S. 472] (1995); (c) whether appellant may challenge the disciplinary hearings pursuant to Edwards v. Balisok, [520 U.S. 641] (1997); and (d) whether the hearing officers are entitled to qualified immunity.
 
 
 21
 Order dated June 18, 1998.
 
 
 22
 As to those undismissed issues, Sims contends that the district court erred in dismissing the complaint pursuant to Fed. R. Civ. P. 12(b)(6). Accepting all of the factual allegations in the complaint as true, see Cohen v. Koenig, 25 F.3d 1168, 1171-72 (2d Cir. 1994), and construing the complaint liberally in the pro se litigant's favor, see, e.g., Haines v. Kerner, 404 U.S. 519, 520 21 (1972) (per curiam); Simmons v. Abruzzo, 49 F.3d 83, 87 (2d Cir. 1995), we agree.
 
 
 23
 Dismissal of a complaint pursuant to Rule 12(b)(6) for failure to state a claim on which relief can be granted is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45 46 (1957); see, e.g., Simmons v. Abruzzo, 49 F.3d at 87. At the Rule 12(b)(6) stage, "[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test." Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998) (internal quotation marks omitted). Our task in reviewing a 12(b)(6) ruling "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 774, 779 (2d Cir. 1984) (internal quotation marks omitted).
 
 A. The Excessive-Force Claims
 
 24
 The Eighth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment, see, e.g., Rhodes v. Chapman, 452 U.S. 337, 344-45 (1981), prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, including the "unnecessary and wanton infliction of pain," Gregg v. Georgia, 428 U.S. 153, 173 (1976). A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components--one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect. See, e.g., Hudson v. McMillian, 503 U.S. 1, 7-8 (1992); Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999).
 
 
 25
 The subjective component of the claim requires a showing that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness'" in light of the particular circumstances surrounding the challenged conduct. Blyden v. Mancusi, 186 F.3d at 262 (quoting Wilson v. Seiter, 501 U.S. 294, 299 (1991); see, e.g., Davidson v. Flynn, 32 F.3d 27, 30 & n.2 (2d Cir. 1994). In an excessive-force case, whether conduct was "wanton" turns on "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7; see also Blyden v. Mancusi, 186 F.3d at 262-63.
 
 
 26
 The objective component of a cruel-and-unusual-punishment claim focuses on the harm done; but the amount of harm that must be shown depends on the nature of the claim. See, e.g., Hudson, 503 U.S. at 8. This objective component is "contextual and responsive to contemporary standards of decency," id. (internal quotation marks omitted), and there are significant differences between the harm that must be shown to support a claim based on prison conditions and the harm that will suffice to support a claimed use of excessive force. To prevail on a claim based on the conditions of his confinement, a prisoner must show "extreme deprivations," "[b]ecause routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,'" id. at 9 (quoting Rhodes v. Chapman, 452 U.S. at 347); see, e.g., Blyden v. Mancusi, 186 F.3d at 263 ("Because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim.").
 
 
 27
 However, no such showing of extreme injury is required when the claim is that prison officials used excessive force:
 
 
 28
 In the excessive force context, society's expectations are different. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated.... This is true whether or not significant injury is evident.
 
 
 29
 Hudson, 503 U.S. at 9. The Hudson prisoner, handcuffed, shackled, and physically held, had been punched and kicked in the mouth, eyes, chest, and stomach; as a result, his teeth were loosened, a partial dental plate was cracked, and he "suffered minor bruises and swelling of his face, mouth, and lip." Id. at4. Although his injuries were "'minor' and required no medical attention," id. at 5 (quoting court of appeals decision that reversed judgment for the prisoner), the Supreme Court held that an Eighth Amendment violation had been proven. "Punishments ...involv[ing] the unnecessary and wanton infliction of pain are repugnant to the Eighth Amendment." Id. at 10 (internal quotation marks omitted). Thus, "[t]he key inquiry under Hudson and its precedents is whether the alleged conduct involved 'unnecessary and wanton infliction of pain.'" Davidson v. Flynn, 32 F.3d at 30 (quoting Hudson, 503 U.S. at 8).
 
 
 30
 In Griffin v. Crippen, 193 F.3d 89 (2d Cir. 1999), a prisoner similarly alleged that prison guards had beaten him while he was handcuffed. The district court summarily dismissed the action because "the only injuries [the prisoner] suffered were a bruised shin and swelling over his left knee," id. at 91. This Court reversed, noting that although the "excessive force claim [wa]s weak and [the] evidence extremely thin," summary dismissal was inappropriate because there were "genuine issues of material fact concerning what transpired after appellant was handcuffed and whether the guards maliciously used force against him." Id. "[T]he malicious use of force to cause harm constitutes an Eighth Amendment violation[ ] per se .... whether or not significant injury is evident." Id. (internal quotation marks omitted).
 
 
 31
 We recognize of course that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights," Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973), and that an allegation indicating "a de minimis use of force will rarely suffice to state a constitutional claim," Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993), for the Eighth Amendment's prohibition against cruel and unusual punishment does not extend to "de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind," Hudson, 503 U.S. at 10 (emphasis added) (internal quotation marks omitted). But a prisoner who alleges facts from which it could be inferred that prison officials subjected him to excessive force, and did so maliciously and sadistically, states an Eighth Amendment claim on which he is entitled to present evidence.
 
 
 32
 The complaint in the present case sufficiently pleaded three Eighth Amendment excessive-force claims on which relief can be granted. As set out in Part I.A. above, Claim 1 pleaded that on February 21, 1995, Sims, while handcuffed, was punched in the ribs, collar, arm, and skull by Hupkowicz and two other officers, causing Sims serious injuries in those areas. Claim 6 pleaded that on July 12, Sims, his arms shackled, was, inter alia, punched in the face four times by Tierney and another officer, causing Sims injury. Claim 9 alleged that on August 29, several defendants punched and kicked Sims in the rib cage, skull, knee cap, backbone, sacrum, spine, collar bone, and teeth, and pulled him by his penis. The complaint alleged that the August 29 assaults caused Sims to seek medical attention.
 
 
 33
 The complaint alleged that each of the beatings described was administered maliciously and sadistically, and without need or provocation. All were alleged to have been far more serious than the "push or shove" contemplated by Johnson. We conclude that the allegations were sufficient to describe unnecessary and wanton infliction of pain and hence to state a claim under the Eighth Amendment.
 
 B. The Due Process Claims
 
 34
 A prisoner asserting that he was denied due process in connection with prison disciplinary hearings that resulted in segregative confinement or a loss of privileges must make a threshold showing that the deprivation of which he complains imposed an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). "After Sandin, in order to determine whether a prisoner has a liberty interest in avoiding disciplinary confinement, a court must examine the specific circumstances of the punishment." Brooks v. DiFasi, 112 F.3d 46, 49 (2d Cir. 1997).
 
 
 35
 The circumstances that the court must examine include "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions[] and ... the duration of the disciplinary segregation imposed compared to discretionary confinement." Wright v. Coughlin, 132 F.3d 133, 136 (2d Cir. 1998). Confinement in SHU may impose hardships that are atypical or significantly different from the burdens of ordinary prison confinement within the meaning of Sandin, see, e.g., Colon v. Howard, 215 F.3d 227, 230-31 (2d Cir. 2000); Welch v. Bartlett, 196 F.3d 389, 392-93 (2d Cir. 1999); Scott v. Albury, 156 F.3d 283, 286-88 (2d Cir. 1998); Wright v. Coughlin, 132 F.3d at 136; Brooks v. DiFasi, 112 F.3d at 48-49; but in order to determine whether or not there are such differences, the district court must make a fact intensive inquiry. See, e.g., Kalwasinski v. Morse, 201 F.3d 103, 106 (2d Cir. 1999) (per curiam) (district court should not have made a finding of typicality "[o]n the basis of its knowledge of the conditions of SHU confinement, derived from evidence presented in one of its prior cases ... without reference to the circumstances of SHU confinement in this case .... Such disregard of the actual circumstances of SHU confinement here was an improper application of Sandin."); Scott v. Albury, 156 F.3d at 288 (court must "perform the Sandin analysis in light of the conditions of prison life as they existed" at the time and place the discipline was imposed).
 
 
 36
 "[T]he duration and the frequency of such deprivations are highly relevant to whether the conditions of a plaintiff's confinement should be considered atypical." Welch v. Bartlett, 196 F.3d at 393; see, e.g., Brooks v. DiFasi, 112 F.3d at 47. Although we have not established a bright-line rule as to how lengthy a SHU confinement will be considered atypical and significant, see, e.g., Colon v. Howard, 215 F.3d at 234, we have characterized segregative sentences of 125-288 days as "relatively long," and thus necessitating "specific articulation of ... factual findings" before the district court could properly term the confinement atypical or insignificant, Hynes v. Squillace, 143 F.3d 653, 658 (2d Cir. 1998) (describing the segregative confinements at issue in Miller v. Selsky, 111 F.3d 7 (2d Cir. 1997) (125 days); Brooks v. DiFasi, 112 F.3d 46 (180 days); and Wright v. Coughlin, 132 F.3d 133 (168 days in SHU, followed by 120 days in keeplock). In Colon we ruled that a prisoner's SHU confinement for 305 days at the Clinton Correctional Facility was "'atypical' and a 'severe hardship' within the meaning of Sandin." 215 F.3d at 229. We also noted that "[t]he longest confinement in normal SHU conditions that we have ruled was not shown to meet the Sandin standard was 101 days," id. at 231 (emphasis added) (discussing Sealey v. Giltner, 197 F.3d 578, 585 (2d Cir. 1999)), and we suggested that even that length might qualify as atypical and severe, see Colon v. Howard, 215 F.3d at 232 n.5 ("We do not exclude the possibility that SHU confinement of less than 101 days could be shown on a record more fully developed than the one in Sealey to constitute an atypical and severe hardship under Sandin."). We instructed the district courts to develop detailed factual records "in cases challenging SHU confinements of durations within the range bracketed by 101 days and 305 days." Colon v. Howard, 215 F.3d at 232 (footnote omitted).
 
 
 37
 In the present case, the complaint alleged that the due process deprivations in connection with Sims's disciplinary hearings resulted in his confinement in SHU. In addition to complaining of the length of his SHU sentences, Sims alleged, inter alia, that his punishments included his being placed in full restraints for nearly seven months; not being allowed even to exercise without those restraints; deprivation, for two 14-day periods, of his normal meals; and being forced to remain naked in his cell for a number of days. It may be that discovery will reveal that such conditions were not imposed or that they were not atypical; but we cannot say that the complaint itself shows that Sims can prove no set of facts that would entitle him to relief.
 
 
 38
 Even more clearly, the complaint alleged that the SHU sentences imposed on Sims were of sufficient length to be atypical and significant. Connolly twice sentenced Sims to serve one year in SHU--each sentence thus exceeding the 305 day-period found atypical and significant in Colon.
 
 
 39
 Further, although the other sentences were shorter, it is possible that some or all of them should be aggregated for purposes of the Sandin inquiry. See generally Sealey v. Giltner, 197 F.3d at 587 n.7 (suggesting that "if conditions were of sufficient harshness that confinement for 365 days constituted atypicality, an official who held a hearing for a prisoner already confined in such conditions for 364 days would normally have to accord procedural due process before continuing the confinement beyond an aggregate interval of 365 days."). In the present case, for example, the complaint alleged that between March 3 and July 27, 1995, little more than a 4½-month period, Sims was sentenced to SHU for a total of nearly 3½ years. The complaint also alleged that both the 60-day sentence and the 90-day sentence described in Claims 2 and 5, respectively, totaling 150 days, were imposed by Coefield. And on a single day, July 12, Sims received two sentences totaling 270 days. Each of these pairs of sentences imposed total SHU confinement within the 101-305 day range as to which the district courts must develop a detailed factual record. We leave for the district court in the first instance exploration of the matter of whether, for purposes of assessing the potential liability of each individual defendant, any individual sentence should be viewed as independent of all the others.
 
 
 40
 Finally, we note that the district court, relying on Edwards v. Balisok, 520 U.S. 641 (1997), also ruled that even if the complaint adequately met the Sandin standard, Sims's due process claims would not be cognizable because he did not allege that any of the rulings in his disciplinary proceedings had been overturned on appeal. Given our recent ruling in Jenkins v. Haubert, 179 F.3d 19 (2d Cir. 1999), we find Edwards inapposite here.
 
 
 41
 In Edwards, the prisoner plaintiff alleged that as a result of deceit and unfairness by the hearing officer presiding over his disciplinary hearing, the prisoner had been sentenced to 10 days of solitary confinement, 20 days in segregative housing, and loss of accrued good time credits. The Edwards Court held that the prisoner's §1983 due process claim would not be cognizable until the disciplinary decision had been overturned through administrative channels or by a state court or a federal court in a habeas proceeding. See 520 U.S. at 643-48. However, in so holding, the Court discussed only the prisoner's loss of good time credits, which affected the length of his overall prison stay. The Court did not discuss the prisoner's complaint of being placed in segregative confinements--perhaps because the 30-day total was the very length of time that Sandin had ruled was not sufficiently atypical to implicate a liberty interest, see Sandin, 515 U.S. at 486-87.
 
 
 42
 In Jenkins v. Haubert, noting that the Edwards Court had focused exclusively on disciplinary punishment that effectively extended the length of the prisoner's overall prison stay, we held that the Edwards principle did not apply where the claim was "properly characterized as a challenge to the conditions of his confinement, rather than as a challenge to the fact or duration of his confinement." 179 F.3d at 27. We concluded that where a prisoner claims a deprivation of due process in disciplinary hearings that resulted in punishment not affecting the fact or duration of his overall confinement, his §1983 action is not barred by the fact that the disciplinary rulings have not been invalidated through administrative or judicial review. See id.
 
 
 43
 Sims's complaint did not challenge the disciplinary proceedings on the basis that they affected the overall length of his confinement; he complained only of the conditions to which he was subjected without procedural due process. Accordingly, Edwards provided no basis for dismissing the complaint.
 
 
 44
 Given our reversal of the district court's ruling that the complaint failed to state a claim on which relief can be granted in light of Sandin, and given the assertions that in the disciplinary hearings Sims was denied, inter alia, the rights to call witnesses, present evidence, and comment on the charges against him, allegations that presented facially valid due process claims as to the manner in which those hearings were conducted, see, e.g., Wolff v. McDonnell, 418 U.S. 539, 555-72 (1974), we also vacate the court's Rule 12(b)(6) dismissal of the claims against the hearing officer defendants on the ground of qualified immunity. We do not foreclose the possibility that one or more of those defendants may eventually be entitled to prevail on that affirmative defense at trial or on summary judgment.
 
 CONCLUSION
 
 45
 For the foregoing reasons, we vacate the judgment of the district court to the extent that it dismissed the Eighth Amendment excessive-force claims asserted with respect to Claims 1, 6, and 9 of the complaint, and the procedural due process claims asserted with respect to Claims 1-7 of the complaint. The matter is remanded for further proceedings not inconsistent with this opinion.