**Lorenzo ROMAINE, Plaintiff,**

v.

**Boyce RAWSON, Defendant.**

**No. 99–CV–0603(LEK/DRH).**

United States District Court, N.D. New York.

April 17, 2001.

Lawrence A. Goldberg, Gordon, Goldberg Law Firm, New York City, Paul A. Shneyer, Sumantra T. Sinha, Office of Paul A. Shneyer, P.C., New York City, for plaintiff.

Roger W. Kinsey, Office of Atty. Gen., Albany, NY, for defendant.

### FINAL—DECISION AND ORDER

KAHN, District Judge.

■ Plaintiff, an inmate in New York State prison, commenced the instant action against Defendant pursuant to 42 U.S.C. § 1983, claiming that Defendant unlawfully assaulted him in violation of his Eighth and Fourteenth Amendment rights.[1] This matter was tried at a bench trial before the Court from November 1, 2001 to November 3, 2001. The Court's findings of fact and conclusions of law follow.[2]

---

1. Plaintiff's proof at trial and post trial submissions were limited to his Eighth Amendment claims. He did not attempt to meet the burdens necessary to prove his Fourteenth Amendment violation. Consequently, the Court concludes that Plaintiff failed to prove by a preponderance of the evidence that Defendant violated his Fourteenth Amendment rights and finds in favor of Defendant on this claim.

2. Initially, the Court notes that at trial Plaintiff moved to amend his complaint to assert a claim against Defendant for punitive damages. Under Rule 15(a) of the Federal Rules of Civil Procedure leave to amend "shall be freely given when justice so requires." Fed. R.Civ.P. 15(a). This Court has held that leave to amend shall be freely given absent any reason to the contrary, such as bad faith, undue delay, or futility of amendment. *See Stetz v. Reeher Enters., Inc.*, 70 F.Supp.2d 119, 121 (N.D.N.Y.1999). Given that Plaintiff

## I. FINDINGS OF FACT

### A. Undisputed Facts Adduced at Trial [3]

On the morning of May 19, 1998, Plaintiff was inside Building No. 40 of the Mt. McGregor Correctional Facility ("Mt.McGregor") to receive a program assignment. At approximately 9:00 a.m., he and correction officer Michael Jiguere had a loud verbal argument concerning the proper sign-in procedures at the facility.[4] Correction Officer Jiguere called his supervisor, Defendant, who arrived about ten minutes later to reprimand Plaintiff for his behavior. Defendant called Plaintiff out of Building 40 and onto its porch to verbally reprimand him. At this point, Defendant's and Plaintiff's version of events differ. The Court will briefly address each version of events seriatim.

### B. Disputed Issues of Fact [5]

#### 1. Synopsis of Defendant's Version of Events

Defendant testified at trial that, once on the porch of Building 40, he discussed the importance of sign-in sheets with Plaintiff and ordered Plaintiff to reenter Building 40 and apologize to Correction Officer Jiguere. Defendant testified that he never touched Plaintiff in any manner and that because Plaintiff presented no threat to him, the utilization of any force against Plaintiff would have been inappropriate.

Notably, Superintendent Pedro Quinones provided testimony indicating that, had Defendant used force against Plaintiff simply for "talking back" to him, Defendant would have been subject to disciplinary proceedings. Corrections Officers John Trembly, Dale Jackson, and Alan Seymour each testified, from different vantage points, that they witnessed Defendant talking to Plaintiff outside of Building 40 during the relevant time period and did not see him physically strike Plaintiff.

#### 2. Synopsis of Plaintiff's Version of Events

Plaintiff testified that Defendant struck him across the face three times while they were on the porch of Building 40 causing him injury. He testified that he was not disrespectful towards Defendant and that he did not in any way provoke the alleged attack. He further testified that the force of Defendant's blows injured his ear and caused him to lose portions of his hearing which he has not yet recovered. Moreover, Plaintiff stated that the immediate pain from the blows lasted two weeks and that he was hurt and humiliated by Defendant's actions. When asked why he did not file any complaint against Defendant for his actions until approximately 4:50 p.m. later that afternoon, Plaintiff replied that he was fearful that Defendant would file a retaliatory disciplinary charge against him.

---

seeks only to change those portions of his complaint relating to damages and does not seek to assert any additional causes of action against Defendant or change the actual amount demanded, the Court concludes that there are no reasons to deny this request. Accordingly, the complaint is hereby deemed amended to assert a claim against Defendant for punitive damages.

3. Each fact contained in this section is deemed proven by a preponderance of the evidence.

4. Correction Officer Jiguere testified that the argument began when Plaintiff signed the assignment roster in an incorrect place. When he called Plaintiff back up to the podium to sign the roster in the correct place, Correction Officer Jiguere stated that Plaintiff became agitated and walked up to him "kind of nonchalantly, like who are you to call me up here."

5. The summaries of disputed facts contained in the following section are presented as background and do not constitute findings of fact, unless specifically noted.

### 3. Medical Evidence Presented

At trial, Defendant produced photographs of Defendant taken by Sergeant Conderse at 5:00 p.m. on the day of the alleged assault. These pictures showed no visible swelling, bruising, or injury to Plaintiff nor did they provide any other indications of assault. Defendant also introduced the medical records taken by Randell Boice, Plaintiff's treating nurse at Mt. McGregor. These records indicated that because Plaintiff was not injured at the time he complained of pain from the alleged assault, no treatment was required.

After the incident, Plaintiff began complaining of hearing loss, ringing in his left ear, and earaches arising from the alleged assault. These complaints resulted in three additional medical visits to various nurses and doctors in the weeks following the alleged assault. Each examination showed no signs of injury to Plaintiff, although it was noted in a May 20, 1998 examination that both of Plaintiff's ears contained impacted ear wax.

Because of continued complaints regarding his hearing, Plaintiff was eventually referred to a hearing center located in Glens Falls, New York where an examination revealed mild sensorineural loss in his left ear at low frequencies. Notably, when Plaintiff was examined on March 29, 1999 at the Buffalo Hearing and Speech Center, he was found to have mild to moderate sensorineural loss at high frequencies in his left ear. Defendant introduced expert testimony from Dr. Karen Tan to explain these seemingly contradictory medical findings and otherwise comment on Plaintiff's alleged hearing loss. Dr. Tan testified that any earaches Plaintiff suffered were likely the result of abnormal ear wax deposits in his ear and not from any alleged slap to his head. Additionally, she testified that during her examination of Plaintiff, he had normal hearing in both ears and that the inconsistencies in the prior tests were the result of incongruent and subjective testing methods that did not adequately diagnose Plaintiff.

### 4. Missing Witness Statements

After Plaintiff filed his administrative complaint against Defendant, Lieutenant Carpenter, an officer at Mt. McGregor, began to investigate whether the complaint had merit. Lieutenant Carpenter interviewed nineteen inmates who were present during the alleged assault. According to Lieutenant Carpenter's testimony, nine of these witnesses asserted that they saw Defendant strike Plaintiff between two and four times. The ten remaining witnesses claimed that they were not able to see the events that transpired after Defendant removed Plaintiff from the building as they were not paying attention.[6]

Somewhat mysteriously, that portion of Lieutenant Carpenter's investigative report containing the nine written witness statements corroborating Plaintiff's version of events and the entire list of witnesses present in Building 40 at the time of the alleged assault was lost at some point after it was delivered to Deputy Superintendent Ward for his review. Although Superintendent Quinones was equivocal at trial as to whether he ever viewed these nine missing witness statements, he claims he was aware of the investigation as it proceeded to trial. In the interim, Inspector Shauger, the official at the Inspector General's Office assigned to investigate Plaintiff's complaint, failed to obtain the call-out list of inmates present in Building 40 at the time of the incident and did not seek to locate those in-

---

**6.** Some noted, for example, that they were in the bathroom playing cards at the time of the alleged assault.

mates who had previously given favorable testimony regarding Plaintiff's version of events. The only excuse testified to by Lieutenant Carpenter as to why these nine favorable witness reports were lost related to an error in his office based on the volume of material that he processes as part of his job.

### C. *Findings as to Disputed Facts*

Primarily, the Court notes that Defendant's factual evidence regarding the loss of the nine witness statements favorable to Plaintiff's case as well as the identities of these witnesses is both convenient for Defendant and somewhat outrageous. The Court strains to find any rational justification for the simple fact that the Department of Corrections mislaid each and every inmate statement verifying that Defendant struck Plaintiff yet did not lose those inmate statements that did not verify Plaintiff's claim. Given these circumstances, and the fact that Lieutenant Carpenter testified that these nine inmates actually saw Defendant strike Plaintiff, the Court finds by a preponderance of the credible evidence that Defendant physically struck Plaintiff across the left side of his face three times after removing him from Building 40. As a secondary matter, the Court also finds that by a preponderance of the credible evidence presented at trial, that Plaintiff did "talk back" to Defendant and acted in a disrespectful and arrogant manner towards him after Officer Jiguere caused Plaintiff to be singled out in front of the other inmates present in Building 40.

Because of the inconsistent medical reports regarding Plaintiff's alleged hearing loss and the expert testimony from Dr. Tan indicating that Plaintiff's hearing was fine, the Court does not conclude that Plaintiff met his burden of showing that he suffered any permanent hearing loss. This conclusion is supported by the fact that the treating nurses and subsequent medical checkups given Plaintiff as well as the photographic and medical records introduced at trial failed to indicate any real or permanent ear injury to Plaintiff. Rather than suffering any physical injury, the evidence adduced at trial indicates that Plaintiff's dignity was bruised more than his person. Accordingly, the Court finds by a preponderance of the evidence that Plaintiff did not suffer any permanent hearing loss or other long-term injury because of Defendant's use of force against him. Instead, the Court finds that Plaintiff suffered only minor physical and emotional injuries.

Boiling these findings of facts to their essentials leaves the Court with one question that it must determine before it may impose liability on Defendant. When a prison guard slaps or strikes a prisoner three times across the face for insubordination and does not physically injure the prisoner, does the prison guard violate the prisoner's Eighth or Fourteenth Amendment rights? Framed another way, the Court must determine whether a prison guard's unprovoked application of a de minimis amount of force against a prisoner violates the prisoner's constitutional rights.

## II. CONCLUSIONS OF LAW

### A. *Eighth Amendment*

 The Eighth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment, *see Rhodes v. Chapman,* 452 U.S. 337, 344–45, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), prohibits the infliction of "cruel and unusual punishments" on inmates, US. Const. amend. VIII. This prohibition includes the infliction of "unnecessary and wanton" pain on an inmate. *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). To validly assert an Eighth Amendment claim for excessive use of force, an inmate must prove two

components, one subjective and the other objective. *See Hudson v. McMillan,* 503 U.S. 1, 7–8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *Blyden v. Mancusi,* 186 F.3d 252, 262 (2d Cir.1999). The subjective component focuses on the defendant's motive for his conduct. *See Blyden,* 186 F.3d at 262. The objective component focuses on the conduct's effect in light of contemporary standards of decency. *See id.*

### 1. *Subjective Component*

■ In order to prove that the Defendant had the necessary state of mind to meet the subjective prong of the Eighth Amendment test, there must be a showing that the Defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness' " *Id.* (quoting *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)); *see also Sims v. Artuz,* 230 F.3d 14, 20 (2d Cir.2000); *Griffin v. Crippen,* 193 F.3d 89, 91 (2d Cir.1999). Whether particular conduct can be characterized as wanton turns on "whether the force was applied in a good-faith effort to restore discipline, or maliciously and sadistically to cause harm." *See Sims,* 230 F.3d at 20 (quoting *Hudson,* 503 U.S. at 7, 112 S.Ct. 995). When determining whether a defendant's state of mind was wanton, courts must "evaluate the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.' " *Hudson,* 503 U.S. at 8, 112 S.Ct. 995 (quoting *Whitley v. Albers,* 475 U.S. 312, 321, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)).

■ The absence of a serious injury is relevant to the wantonness of inquiry, "but does not end it." *Id.* If it is shown that the defendant had a wanton state of mind when engaging in the alleged misconduct, he will have per se satisfied the subjective

component of the Eighth Amendment regardless of whether "significant injury is evident." *Griffin,* 193 F.3d at 91. The rationale behind this rule is that "in the excessive force context, society's expectations are different. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are violated ... This is true whether or not significant injury is evident." *Hudson,* 503 U.S. at 9, 112 S.Ct. 995.

Applying these principles to the instant case reveals that Defendant's actions were wanton. Defendant admitted that Plaintiff presented absolutely no threat to him and that the utilization of force against Plaintiff for the alleged misbehavior violated prison regulations and was otherwise inappropriate. Moreover, Defendant did not make a good-faith effort to temper his response and utilize the host of administrative and non-forcible remedies available to him including filing an administrative complaint against the prisoner and otherwise denying him various privileges.

Instead, Defendant struck Plaintiff, at a minimum, out of anger because of Plaintiff's disrespectful attitude towards him. The Court is mindful that, while "talking back" to an individual when one feels humiliated is a common occurrence in outside society, it is not easily tolerated in a prison environment where strict adherence to rules and order within the walls are mandated for security, safety, and discipline. The Court is also respectful of Defendant's long career with the Department of Corrections and his reputation for requiring prisoners to strictly adhere to and respect the rules of the prison. Nevertheless, under the full record adduced at trial, including Defendant's admission that there was no need to use force against Plaintiff, that Plaintiff posed no reasonable threat to him, that Defendant did not temper his

response by utilizing other non-forcible means available to him, and that Plaintiff behaved in a disrespectful manner towards Defendant, the Court concludes that Defendant's sole motivation for striking Plaintiff was to wantonly inflict pain on him because of Defendant's anger at Plaintiff's attitude.

### 2. Objective Component

The objective component of the Eighth Amendment test focuses on the harm done; but the amount of harm that must be shown depends on the nature of the claim. *See Sims*, 230 F.3d at 20. The objective component is "contextual and responsive to contemporary standards of decency." *Hudson*, 503 U.S. at 8, 112 S.Ct. 995. Of course "[n]ot every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). As such, an allegation that indicates only a de minimis use of force will "rarely suffice to state a constitutional claim," *Sims*, 230 F.3d at 22 (quoting *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir.1993)), unless the use of force is the "sort repugnant to the conscience of mankind," *Id.* (quoting *Hudson*, 503 U.S. at 10, 112 S.Ct. 995). Accordingly, if a prison guard subjects a prisoner to excessive force, and does so maliciously and sadistically, the prison guard violates the prisoner's Eighth Amendment rights. *Id.*

In this case, the prisoner was unable to show any serious injury resulting from Defendant's strikes to his head. The testimony at trial indicated that the strikes to his head were either three open-fisted slaps or three-closed fisted strikes. Regardless, of whether the strikes were open-fisted or closed-fisted, given the lack of any visible injury to Plaintiff, the Court concludes that Defendant's application of force against Plaintiff was de minimis.

Nevertheless, even this de minimis use of force against Plaintiff was "repugnant to the conscience of mankind" because Defendant struck Plaintiff out of anger and frustration in a situation where all parties admit that force was not necessary. Particularly relevant to this inquiry is the fact that, as Superintendent Quinones testified, prison regulations expressly proscribe using force against prisoners in the manner which Defendant used force against Plaintiff and Defendant could have easily controlled Plaintiff by using other non-forcible means. In this Court's view, even one slap against a prisoner is objectively unreasonable and "repugnant to the conscience of mankind" when, as here, the prisoner presents no threat to prison guards or others, poses no security risk, and does not otherwise pose a danger to himself.

Conceding the paramount importance of maintaining security and discipline within the confines of a prison, the Court must hold prison guards to an objectively reasonable standard of behavior. This objectively reasonable standard of behavior, by its very definition, as the Supreme Court has long recognized, prohibits guards from maliciously, sadistically, or wantonly slapping, striking, kicking, or punching prisoners simply because a prisoner shows a disrespectful attitude towards the guard. *See Hudson*, 503 U.S. at 9, 112 S.Ct. 995. Since Defendant here behaved in a wanton and malicious manner when he struck Plaintiff with no provocation and no need to use force, the Court finds that he behaved in an objectively unreasonable manner. Of course this finding is not designed, nor should it be read, to provide shelter to prisoners who think that they can taunt, abuse, and goad prison guards into physically striking them with the expectation that the Courts will reward them with substantial civil rights

awards for their misbehavior. Rather, when as here, all parties admit that no amount of force was needed to maintain discipline and security within the prison, guards cannot physically assault prisoners simply because they are angry at them.

### B. *Qualified Immunity*

 The affirmative defense of qualified immunity "shields public officials from liability for their discretionary acts that do 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hathaway v. Coughlin,* 37 F.3d 63, 67 (2d Cir.1994) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). In short, the Constitutional right "must be sufficiently definite so that the official understood that his actions violated it or, in other words, that the unlawfulness of his actions was evident." *Eng v. Coughlin,* 858 F.2d 889, 895 (2d Cir.1988). To determine whether a particular right was clearly established at the time of the alleged violation, courts should consider:

> (1) whether the right in question was defined with "reasonable specificity;" (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991).

 Defendant, in his post trial brief, claims that he is entitled to qualified immunity. Defendant argues, in part on the basis of cases distinguishable from the one here, that the law in this circuit concerning the de minimis use of force is so unsettled that a reasonable officer would not know that he violated Plaintiff's rights by slapping or striking him in the head three times in response to his insubordination. *Compare Brown v. Croce,* 967 F.Supp. 101, 104 (S.D.N.Y.1997) (two slaps to the head constituted de minimis force and were not actionable) *with Jones v. Huff,* 789 F.Supp. 526, 536 (N.D.N.Y.1992) (two kicks to prisoner's buttocks causing no injury were actionable). This Court disagrees with Defendant.

First, Defendant's concession at trial that no amount of force was needed or appropriate to control the situation with Plaintiff belies the fact that he knew, and a reasonable officer would have understood, that his actions were unlawful. Second, Superintendent Quinones' testimony that the use of force in this situation to subdue Plaintiff would have resulted in administrative sanctions against Defendant also supports the fact that Defendant knew that his actions were unlawful. Finally, Defendant's reliance on *Brown,* 967 F.Supp. 101 and its progeny to assert that the case law regarding the wanton application of a de minimis amount of force against a prisoner is unavailing.

The Supreme Court and this Circuit, as already discussed, have long held that contemporary standards of decency are *always* violated when a prison guard wantonly applies force to a prisoner to cause harm *regardless* of whether significant injury is evident. *See Hudson,* 503 U.S. at 9, 112 S.Ct. 995; *Griffin v. Crippen,* 193 F.3d 89, 91 (2d Cir.1999). In *Brown,* the Court recognized this well settled rule but nevertheless concluded that the Defendant did not have the requisite "wanton" state of mind necessary to make out an Eighth Amendment claim when he slapped Plaintiff twice. *See Brown,* 967 F.Supp. at 104. The Court concluded that Plaintiff's alleged drunkenness as well as the fact that he was found guilty of a Tier II violation for harassing and interfering with a Corrections Officer indicated that the officer

"belies an [sic] rational inference that [Defendant] was acting with a wanton state of mind." *Id.*

In this case, Plaintiff was not drunk and did not interfere with an officer. Instead, he simply mouthed off to Defendant and Defendant hit him in response. Given these facts, the well settled case law regarding *per se* violations of the Eighth Amendment, and this Court's findings that Defendant acted with a wanton state of mind, the Court holds that Plaintiff's rights were defined by the case law of this Circuit with reasonable specificity and that a reasonable officer in Defendant's position would have understood that his acts were unlawful. Consequently, he is not entitled to qualified immunity for his actions against Plaintiff.

### III. DAMAGES

In light of the above findings and conclusions, an award of damages to Plaintiff is appropriate to compensate him for his pain and suffering caused by his injuries. *See Jones*, 789 F.Supp. at 537. This award of damages, though, must be tempered by the fact that Plaintiff failed to prove any permanent hearing loss or other long term injury at trial. Instead, the only injury proven by a preponderance of the evidence is the immediate physical and emotional pain Plaintiff occasioned due to the three smacks Defendant inflicted upon him.

Under the Prison Litigation Reform Act ("PLRA"), when a prisoner seeks damages for mental or emotional injury, he must also make a prior showing of physical injury. *See Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir.1999). The Court finds that although the physical injuries Defendant suffered were minor, they do satisfy the physical injury requirement of the PLRA. Therefore, Plaintiff is entitled to recover damages for the physical injuries he suffered in the amount of $100 and $900 for the emotional pain and suffering he experiences as a result of Defendant's actions.

The Court also finds that Plaintiff is entitled to an award of punitive damages from Defendant. An award of punitive damages is appropriate "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983); *see McCardle v. Haddad*, 131 F.3d 43, 53–54 (2d Cir. 1997). Defendant's motive in this case exhibited a wanton disregard of Plaintiff's rights given his admissions at trial and the fact that his actions were prohibited by prison regulations. At the same time, given the lack of severity of Plaintiff's injuries and Defendant's long standing record of service to the Department of Corrections, the Court holds that Plaintiff is entitled to an award of $500 in punitive damages from Defendant.

### IV. CONCLUSION

Accordingly, it is hereby

ORDERED that the Clerk of the Court enter judgment on behalf of Plaintiff for his Eighth Amendment claim; and it is further

ORDERED that Defendant pay Plaintiff $1,000 in compensatory damages and $500 in punitive damages; and it is further

ORDERED that the Clerk of the Court enter judgment on behalf of Defendant as to Plaintiff's Fourteenth Amendment claim; and it is further

ORDERED that the Clerk of the Court serve a copy of this Order on all parties by mail.

IT IS SO ORDERED.