Li–Lan TSAI, Plaintiff,

v.

THE ROCKEFELLER UNIVERSITY,
Defendant.

No. 00 CIV 329 SAS.

United States District Court,
S.D. New York.

Feb. 7, 2001.

Li–Lan Tsai, Queens, NY, Pro se.

Proskauer Rose LLP, New York City, for Defendant.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiff Li–Lan Tsai, proceeding pro se, brings suit against her former employer under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, alleging retaliation, failure to accommodate, unequal terms and conditions of employment, and unlawful termination. Defendant, the Rockefeller University ("RU"), moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(c). For the following reasons, defendant's motion is denied.

## I. FACTS[1]

Plaintiff began working for RU in September, 1978. *See* Letter dated June 10, 1993 ("6/10/93 Ltr.") at 1. In June of 1993, the Director of the Laboratory Safety Department informed plaintiff that funding for her position would be discontinued as of July 1, 1993. *See* Letter from Dr. Edward L. Gershey dated June 8, 1993. Plaintiff was assured by RU's then Assistant Director of Personnel, Ms. Mary Ann George, that even though her position had been eliminated, she would not be terminated and would remain on RU's payroll. *See* 6/10/93 Ltr. at 2. On June 24, 19993, plaintiff was interviewed by Dr. Steven J. Shiff who offered plaintiff a position in his laboratory beginning August 16, 1993. *See* Letter dated August 16, 1993 ("8/16/93 Ltr.") at 1.

Shortly after she began working for Dr. Shiff, plaintiff missed approximately one work day per month. Her absence resulted from severe cough, sore throat and fever, caused by Hepatitis B. *See* Letter dated March 23, 1994 ("3/23/94 Ltr.") at 1–2; *see also* Letter from Dr. Steven J. Shiff dated March 23, 1994 at 1 ("Your absenteeism has become a regular occurrence, as you have called in sick at least one day per month since starting in mid-August. This is in addition to the frequent number of times you have requested and I have granted permission for you to leave early."). In August of 1996, plaintiff was denied a salary increase. *See* Letter from Dr. Steven J. Shiff dated August 8, 1996 ("I did not recommend you for an increase because of your poor overall attendance record and failure to adhere to University policy regarding reporting absences from work due to personal illness ... [I]n order

---

1. The facts are taken from plaintiff's pro se form Complaint and the numerous documents appended thereto. These documents consist, in part, of plaintiff's hand-written letters which are identifiable by date. Because these additional documents are not numbered, the letters will be referred to by date and the remaining documents by title.

to continue your position as Research Assistant in my laboratory, you are expected to maintain good and regular attendance.").

In early November 1996, plaintiff was diagnosed with cirrhosis of the liver which may have been caused by occupational exposure to a liver carcinogen, Xylene, which plaintiff used on a daily basis. *See* Letter dated January 17, 2000 ("1/17/00 Ltr.") at 1–2. On November 20, 1996, while plaintiff was having a blood test, Dr. Shiff called her into his office and terminated her employment. *See id.* at 3; *see also* Letter from Dr. Shiff dated November 20, 1996 ("Shiff 11/20/96 Ltr."). In his letter, Dr. Shiff stated that "the unreliability of [plaintiff's] attendance due to belated requests for vacation days and unscheduled absences (many of which have surrounded scheduled time off) have not only affected [plaintiff's] performance but also had an adverse impact on the overall operation of the laboratory and hindered the progress of my work." Shiff 11/20/96 Ltr. at 1.

Approximately three years later, on October 14, 1999, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") charging unlawful termination and retaliation. *See* Charge of Discrimination dated October 14, 1999. In addition to the allegation of unlawful termination, plaintiff also claims that defendant failed to accommodate her disability by ignoring a doctor's request that plaintiff be assigned light work. *See id; see also* Discriminatory Incidences Letter ("DI Ltr."), undated, at 2. Specifically, plaintiff claims that defendant forced her to transport carts "loaded with chemicals and solvent bottles" to and from a building located two blocks from her place of employment. DI Ltr. at 2–3. Plaintiff also complains that she was denied the opportunity for knee surgery because it would have caused a further loss of work time,

while a colleague, Jim Gugluzza, told plaintiff that he took three months leave at full pay to have similar surgery. *See* Letter dated August 8, 1996 ("8/8/96 Ltr.") at 1. The EEOC issued plaintiff a right-to-sue letter dated October 21, 1999. Plaintiff's Complaint is dated January 18, 2000.

## II. Discussion

### A. Motion to Dismiss Standard

The standard applicable to a motion to dismiss under Rule 12(c) is the same as that under Rule 12(b)(6). *See Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir.1998). Dismissal of a complaint for failure to state a claim pursuant to Rule 12(b)(6) is proper only where " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim that would entitle [her] to relief.' " *ICOM Holding, Inc. v. MCI Worldcom,* Inc., 238 F.3d 219, 220 (2d Cir. 2001) (quoting *Harris v. City of New York,* 186 F.3d 243, 247 (2d Cir.1999)). "At the Rule 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.' " *Sims v. Artuz,* 230 F.3d 14, 20 (2d Cir.2000) (quoting *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998) (internal quotation marks)). The task of the court in ruling on a Rule 12(b)(6) motion is " 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' " *Sims,* 230 F.3d at 20 (quoting *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.,* 748 F.2d 774, 779 (2d Cir.1984) (internal quotation marks omitted)).

To properly rule on a 12(b)(6) motion, the court must accept as true all material

facts alleged in the complaint and draw all reasonable inferences in the nonmoving party's favor.[2] *See ICOM Holding,* at 220. Nevertheless, "[t]o survive a motion to dismiss, [plaintiff's] claims must be 'supported by specific and detailed factual allegations' not stated 'in wholly conclusory terms.'" *Friedl v. City of New York,* 210 F.3d 79, 85–86 (2d Cir.2000) (quoting *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir. 1983)). Because "most pro se plaintiffs lack familiarity with the formalities of pleading requirements, [courts] must construe pro se complaints liberally, applying a more flexible standard to evaluate their sufficiency." *Lerman v. Board of Elections in the City of New York,* 232 F.3d 135, 140 (2d Cir.2000) (citing *Hughes v. Rowe,* 449 U.S. 5, 9–10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) and *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). Thus, dismissal is "'appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.'" *Friedl,* 210 F.3d at 83 (quoting *Harris,* 186 F.3d at 250 (internal quotation marks omitted)). "'This rule applies with particular force where the plaintiff alleges civil rights violations or where the complaint is submitted pro se.'" *Cruz v. Gomez,* 202 F.3d 593, 596 (2d Cir.2000) (quoting *Chance,* 143 F.3d at 701).

Because plaintiff is proceeding pro se, the factual allegations raised in Plaintiff's Opposition to Defendant's Motion to Dismiss ("Pl.Opp.") will be treated as part of her Complaint. *See Gill v. Mooney,* 824 F.2d 192, 195 (2d Cir.1987) (considering pro se plaintiff's affidavit in reviewing district court's dismissal of claim); *Donahue v. United States Dep't of Justice,* 751 F.Supp. 45, 49 (S.D.N.Y.1990) ("The policy reasons favoring liberal construction of pro se pleadings warrant the Court's consideration of the allegations contained in plaintiffs' memorandum of law, at least where those allegations are consistent with the allegations in the complaint.").

## B. Statute of Limitations

"In states such as New York that have an agency with the authority to address charges of discriminatory employment practices, the statute of limitations for filing a charge of discrimination with the EEOC is 300 days."[3] *Butts v. City of New York Dep't of Hous., Pres. and Dev.,* 990 F.2d 1397, 1401 (2d Cir.1993). And a plaintiff who fails to file a timely charge with the EEOC is generally barred from bringing a claim of discrimination in federal court. *Id.* It is well established, however, that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines,* 455 U.S.

---

2. In deciding a Rule 12(b)(6) motion, the court must limit itself to facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference. *See Dangler v. New York City Off Track Betting Corp.,* 193 F.3d 130, 138 (2d Cir.1999). Furthermore, the Court may take judicial notice of reports of administrative bodies without converting a motion to dismiss into one for summary judgment. *See McBride v. Routh,* 51 F.Supp.2d 153, 155 (D.Conn. 1999).

3. Title VII, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.,* and the ADA, all have the same 300 day filing deadline. *See Braham v. State Ins. Fund,* No. 97 Civ. 7121, 1999 WL 14011, at *2 (S.D.N.Y. Jan. 14, 1999) (ADEA and Title VII have the same exhaustion requirement); *Lloret v. Lockwood Greene Engineers, Inc.,* No. 97 Civ. 5750, 1998 WL 142326 (S.D.N.Y. Mar. 27, 1998) (ADA and ADEA have same 300 day limit).

385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).

 The principle underlying the filing requirement is " 'to give prompt notice to the employer,' thereby encouraging conciliation where possible." *Snell v. Suffolk County,* 782 F.2d 1094, 1101 (2d Cir. 1986) (quoting *Zipes,* 455 U.S. at 398, 102 S.Ct. 1127). *See also Levy v. U.S. General Accounting Office,* No. 97 Civ. 4016, 1998 WL 193191, at *1 (S.D.N.Y. Apr. 22, 1998). However, the Supreme Court has recognized the need for flexibility as the " 'remedial purpose of the [civil rights] legislation as a whole' would be defeated if aggrieved plaintiffs were absolutely barred from pursuing judicial remedies by reason of excusable failure to meet the time requirement." *Johnson v. Al Tech Specialties Steel Corp.,* 731 F.2d 143 (2d Cir.1984) (quoting *Zipes,* 455 U.S. at 398, 102 S.Ct. 1127). *See also Williams v. Salvation Army,* 108 F.Supp.2d 303, 308 n. 6 (S.D.N.Y.2000); *Timbol v. Commercial Bank of Kuwait,* No. 99 Civ. 1891, 2000 WL 282886, at *3 (S.D.N.Y. Mar. 15, 2000). Furthermore, "technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process." *Love v. Pullman Co.,* 404 U.S. 522, 527, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). *See also Hart v. J.T. Baker Chem. Co.,* 598 F.2d 829 (3d Cir.1979) (it is "reasonable for courts to be flexible in appropriate cases when reviewing failures by aggrieved persons to comply with procedural technicalities").

## C. Equitable Tolling

### 1. Mental and Physical Condition

 Plaintiff seeks to toll the 300 day limitations period because of a combination of mental and physical infirmities. In her Complaint, Plaintiff states that after her termination she was not even able to tend to her two young children due to her physical illness and a "nervous break-down due to the unjustified termination." *See* Letter dated January 17, 2000 ("1/17/00 Ltr."). In addition to her allegations of physical fatigue and mental exhaustion, plaintiff has recited facts indicating a possible post-traumatic stress disorder. Specifically, plaintiff reports that while her mother died in 1980, she could not mention her mother's name until nine years later, when she herself became a mother. *See* Pl. Opp. at 1. Plaintiff's termination caused her to relive the pain she felt after her mother's death. *See id.* at 2. According to plaintiff, she could not "think, speak or even pronounce the word 'Rockefeller.' " *Id.* Apparently, plaintiff's mental turmoil continues unabated. Plaintiff reports that when she visited her sister in the hospital on October 3, 2000, she had the urge to jump out the window upon seeing the RU campus. *See id.* at 4. And while plaintiff admits to informally consulting an attorney in May of 1997, it was extremely painful for her to recall the "tortuous" process of termination.[4] *Id.* at 6.

 The Second Circuit has recognized that the "question of whether a person is sufficiently mentally disabled to justify tolling of a limitation period is ... highly case-specific." *Boos v. Runyon,* 201 F.3d 178, 184 (2d Cir.2000). *See also Canales v. Sullivan,* 936 F.2d 755, 756 (2d Cir.1991) ("mental impairment may warrant equitable tolling of the statute of limitations under some circumstances"). The question of tolling, which is limited to exceptional circumstances and decided by

---

4. What was actually accomplished, if anything, during this consultation is questionable given that plaintiff was unable to complete a sentence due to shortness of breath and fatigue. *See* Pl. Opp. at 6.

principles of equity, is guided by state law. *See Lloret,* 1998 WL 142326, at *2 (citing *Biester v. Midwest Health Servs., Inc.,* 77 F.3d 1264, 1268 (10th Cir.1996)). In New York,

> the toll for insanity is narrowly interpreted and extends only to those individuals who are unable to protect their legal rights because of an overall inability to function in society. The disability must me of such a nature that plaintiff is unable to manage [her] business affairs and is incapable of comprehending and protecting [her] legal rights and liabilities.

*Hedgepeth v. Runyon,* No. 96 Civ. 1161, 1997 WL 759438, at *4 (S.D.N.Y. Dec. 10, 1997) (internal quotation marks and citations omitted). *See also Braham,* 1999 WL 14011, at *3 ("Illness may be an exceptional circumstance when it has prevented the party from pursuing her legal rights."); *Graboi v. Kibel,* 432 F.Supp. 572, 579 (S.D.N.Y.1977) (purpose of tolling is to relieve a *plaintiff* from the strict time restrictions who, because of mental illness, lacks the ability or capacity to pursue lawful rights).

Tolling has been permitted in cases of post-traumatic stress disorder, when coupled with other symptoms or illnesses. As one New York court explained:

> Post-traumatic stress disorder is a clinically diagnosed mental disorder in which the victim avoids situations that stimulate recall of traumatic events or experiences. The victim attempts to repress psychologically unacceptable experiences until a later time in life when it might be possible to cope with them. While mere repression may be insufficient to toll the Statute of Limitations, where the repression is but one of a bundle of claimed injuries the totality of which, if established, would indicate an overall inability to function in society then the Statute of Limitations will be tolled.

*Anonymous v. Anonymous,* 154 Misc.2d 46, 584 N.Y.S.2d 713, 720–21 (1992). Judge Arthur Spatt quoted *Anonymous* with approval when he held that the severity of a mental disability is a fact question that cannot be decided as a matter of law based solely on the pleadings. *See Wenzel v. Nassau County Police Dep't,* No. CV–93–4888, 1995 WL 836056, at *5 (E.D.N.Y. Aug. 5, 1995) ("In order to determine the extent of the alleged mental disability, it is necessary to consider all of the surrounding facts and circumstances which may be relevant to the plaintiff's ability to protect her legal rights.").

At this preliminary stage, plaintiff has sufficiently alleged a combination of physical and mental conditions to warrant tolling.[5] Plaintiff suffers from both physical and mental infirmities. Her mental condition, which does not appear to be limited to depression, is exacerbated by any mention of RU, her former employer. Thus, the fact that plaintiff was able to file for disability benefits in 1997, which is a non-adversarial process, does not necessarily refute her inability to file an EEOC charge. Filing an EEOC charge is an adversarial proceeding that forces a complainant to relive the memories of the al-

---

**5.** This holding is not undermined by the fact that plaintiff filed an application for Social Security disability benefits on April 24, 1997. In *Hedgepeth,* tolling was not warranted because plaintiff sought disability retirement benefits in the months between her termination and the filing of her EEOC charge. *See* 1997 WL 759438, at *5. In that case, plaintiff complained of depression without any accompanying physical illness. *See id.* at *4. Moreover, *Hedgepeth* was a summary judgment decision where plaintiff offered little evidence of any mental disability. *See id.* at *5.

leged discriminatory treatment.[6] Plaintiff has adequately alleged that she was incapable of bringing an EEOC complaint following her termination, and thus may be entitled to equitable tolling.[7] Accordingly, defendant's motion to dismiss the Complaint as untimely is denied.

## 2. Alleged Misconduct by the EEOC

■ Plaintiff has alleged that she was told by EEOC personnel that the statute of limitations for a discrimination complaint is three years. *See* 1/17/00 Ltr. at 3. Plaintiff relied on this misstatement and chose to delay filing her complaint with the EEOC until her emotions were under control and her physical condition stabilized. *See* Pl. Opp. at 6–7. Drawing every inference in plaintiff's favor, this misstatement constitutes affirmative misconduct on the part of the EEOC.[8]

■ In *Vernon v. Cassadaga Valley Cent. Sch. Dist.*, 49 F.3d 886, 891 (2d Cir. 1995), the Second Circuit questioned whether equitable tolling would ever be appropriate when the EEOC is not a party. "First, unlike in *Long*, the EEOC was not even a party defendant here: it is therefore *questionable* whether its acts could lead to equitable tolling." *Id.* (emphasis added). Despite the *dicta* of *Cassadaga*, at least one court in this circuit has applied equitable considerations to deny a

motion to dismiss based on the failure to file an EEOC charge. In *Angotti v. Kenyon & Kenyon*, 929 F.Supp. 651, 656 (S.D.N.Y.1996), Judge John G. Koeltl held:

> In the present case, however, the plaintiff was pro se at the time of her EEOC charge filing, although she had consulted informally with an attorney. And, while the plaintiff indeed was an experienced attorney, there is evidence in this case that she was affirmatively mislead by the EEOC interviewer. Whether this plaintiff did in fact rely on the interviewer's misinformation is a question of fact that remains undetermined and cannot be resolved on a motion to dismiss.

*Id.* at 658. Here, unlike the plaintiff in *Angotti*, the plaintiff was a lay person completely unfamiliar with the administrative process, thus making equitable consideration even more appropriate.[9] Accordingly, the EEOC's alleged misconduct in informing plaintiff that she had three years in which to file her charge serves as an alternative basis for equitable tolling.

## D. Title VII Claim

■ Defendant also seeks to dismiss the Title VII claim because plaintiff only checked the "disability" box in her form Complaint. Obviously, plaintiff is an Asian woman. In her Complaint, plaintiff alleged that a male, presumably a Cauca-

---

6. Plaintiff did not testify at an administrative hearing until May 25, 1999, when she was represented by counsel.

7. This issue will undoubtedly be revisited on summary judgment based on a full record.

8. Plaintiff's situation is thus distinguishable from *Long v. Frank*, 22 F.3d 54, 58–59 (2d Cir.1994), where the court held that ambiguity in a right-to-sue letter resulting from uncertainty in the law did not amount to affirmative misconduct on the government's part. Here, plaintiff was told she had three years in which to file her EEOC charge. This is not an ambiguous statement, it is flat out wrong.

Moreover, unlike the plaintiff in *Long*, plaintiff relied on the misstatement in waiting to file with the EEOC.

9. The fact that plaintiff informally consulted an attorney does not give her constructive knowledge of the 300 day limitations period. *Cf. Keyse v. California Texas Oil Corp.*, 590 F.2d 45, 47 (2d Cir.1978) (tolling improper if plaintiff was represented by counsel during the limitations period). This rule should not be extended to a single consultation with an attorney especially when a plaintiff is in poor physical and/or mental condition.

sian, received preferential treatment regarding a three month surgical leave. *See* 8/8/96 Ltr. at 2. Plaintiff has thus pled a prima facie case of disparate treatment under Title VII. *See Tarshis v. Riese Org.*, 211 F.3d 30, 36 (2d Cir.2000) (in order to establish a prima facie case under Title VII, a plaintiff must show that she was: (1) a member of a protected class, (2) qualified for and satisfactorily performing her job, (3) subjected to an adverse employment decision, and that (4) this adverse decision occurred under circumstances giving rise to an inference of discrimination) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir.1994)).

█ Nor does the fact that plaintiff omitted to check the appropriate boxes on her EEOC charge necessitate dismissal of her Title VII claim. As the Second Circuit has explained, claims not mentioned in the initial EEOC charge will not be barred if they are "reasonably related" to the initial charge. *See Butts*, 990 F.2d at 1401. *See also Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir.1998). The "reasonably related" doctrine thus permits claims not raised in the EEOC charge if the conduct at issue would fall with the "scope of the EEOC investigation which can be reasonably expected to grow out of the charge of discrimination." *Butts*, 990 F.2d at 1402 (internal quotation marks omitted). A number of courts, however, have held that Title VII claims are not reasonably related to ADA claims. *See, e.g., Aratari v. Genesee County Sheriff's* Office, No. 00–CV–0163E, 2000 WL 1047701, at *1 (W.D.N.Y. July 25, 2000) (dismissing ADA claim because it was not reasonably related to properly charged Title VII claim); *Herzog v. McLane Northeast, Inc.*, 999 F.Supp. 274, 276 (N.D.N.Y.1998) (dismissing Title VII claim where EEOC charge only alleged discrimination based on the ADA); *McNealy v. New York Pub. Library*, No. 96 Civ. 3023, 1997 WL 607548, at *3 (S.D.N.Y.1997) (finding plaintiff's disability claim not reasonably related to her initial charge of race discrimination).

The "reasonably related" doctrine is best understood when one considers the purpose underlying the administrative exhaustion requirement—"to give the administrative agency the opportunity to investigate, mediate, and to take remedial action to encourage settlement." *Herzog*, 999 F.Supp. at 276 (citing *Stewart v. United States Immigration and Naturalization Serv.*, 762 F.2d 193, 198 (2d Cir.1985)). These goals explain the rationale of the "reasonably related" exception—if the claim is one in which the EEOC would attempt to settle or negotiate as a matter of course, the employer is not prejudiced by its inclusion in a later filed lawsuit despite its absence in the EEOC charge. All of this makes sense, however, only when the EEOC is attempting to first resolve the dispute between the parties without resort to litigation. Here, plaintiff's EEOC charge is dated October 14, 1999, while her right-to-sue letter is dated October 21, 1999, exactly one week later. By summarily dismissing her complaint as time-barred, the EEOC never attempted to resolve plaintiff's grievances. Thus, whether plaintiff checked the "race," "sex," or "national origin" boxes on EEOC Form 5 (Charge of Discrimination) is immaterial as no conciliation was ever attempted. Accordingly, defendant's motion to dismiss plaintiff's Title VII claim as untimely is denied.

## III. CONCLUSION

For the reasons stated above, defendant's motion to dismiss is denied in its

entirety. A conference is scheduled for February 26, 2001 at 4:30 p.m.