Patrice **BENJAMIN** and Brenda **Thomas,** Plaintiffs,

v.

**BROOKHAVEN SCIENCE ASSOCIATES, LLC,** Defendants.

No. 04–CV–3345 (ADS)(ARL).

United States District Court, E.D. New York.

Aug. 24, 2005.

Bernard Weinreb, Esq., Suffern, NY, for the Plaintiffs.

Proskauer Rose LLP, by Edward Cerasia II, Esq., and Elana Gilaad, Esq., of Counsel, Newark, NJ, for the Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Patrice Benjamin ("Benjamin") and Brenda Thomas ("Thomas") (collectively, the "Plaintiffs") commenced this action against the Brookhaven Science Associates, LLC ("BSA" or the "Defendant") pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 et seq. ("Title VII"); the New York Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296; and 42 U.S.C. § 1983 for alleged violations of the First and Fourteenth Amendments. Benjamin also seeks relief pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, et seq. (the "ADA").

Presently before the Court is (1) a motion by BSA pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for partial judgment on the pleadings; and (2) a cross motion by the Plaintiffs pursuant to Fed.R.Civ.P. 15(a) to amend the complaint.

## I. BACKGROUND

The following facts are taken from the complaint and are accepted as true for purposes of this motion.

### A. Allegations Relating to Benjamin

From August 1987 until October 31, 2003, Benjamin, a male African American, was employed at the Brookhaven National Laboratory ("BNL"). From 1987 through 1996, Benjamin was assigned to the Radio Frequency Group. At the time of his assignment to the group, it was comprised of sixteen technicians, including three African Americans, and thirteen Caucasians. The complaint alleges, that by 1996, each of the Caucasian employees in the Radio Frequency Group had been promoted at least once, while none of the African Americans had been promoted. At some point, Benjamin complained about this apparent disparity to the human resources department. Benjamin also complained that when he received performance appraisals, such appraisals were completed without any input from his supervisor.

In November 1996, after his complaints to the human resources department, Benjamin was transferred to BNL's "Pulsed Power Group." During the next two years, Benjamin complained to his superiors about the lack of his advancement. In October 1998, Benjamin was promoted to "senior technical specialist."

In or about 1998, the BNL formed the "BNL Diversity Focus Group" (the "Group") allegedly as a result of an employee survey that indicated a lack of trust in management to appropriately deal with employee concerns. The complaint alleges that one year later, the Department of Energy Task Force on Racial Profiling visited BNL on a "fact finding mission" and reached the same result. At this time Benjamin joined the Group. Thereafter, the Group recommended the inception of the Brookhaven Advocacy Council ("BAC"). BAC was empowered to investigate employee concerns and recommend resolutions to supervisors and managers. Benjamin handled several investigations as a member of BAC. As a member of BAC, Benjamin would have access to "uncensored documents" during an investigation.

At some point, Benjamin was assigned to lead an investigation of a matter involving Marly Tardd, an African American technician. Tardd claimed that a "KKK

hood, a noose and a KKK doll" were directed at him and other African American employees (the "Tardd Matter"). The complaint alleges that Michael Loftus ("Loftus"), the BAC Chairperson, obstructed the investigation of the Tardd Matter and, while Benjamin was out of work on vacation, terminated the investigation. Upon his return, Benjamin attempted to have the investigation into the Tardd Matter reopened.

The complaint alleges that Benjamin subsequently began experiencing harassment in the workplace. In particular, Benjamin was advised that Andy McNerney ("McNerney"), the Associate Chair of Operations at the Collider Accelerator Division at BNL, "was asking many questions about Benjamin" including questions relating to Benjamin's involvement with the BAC. McNerney subsequently ordered Benjamin's supervisor to assign Benjamin to work involving "cable pulling." According to Benjamin's EEOC Charge, which was attached to the Defendant's Answer, this attempt to transfer occurred in September 2002. This type of work is not part of a technician's regular assignment and is "physically demanding." BNL was allegedly aware that Benjamin had injuries to his back and knee that precluded such activity, confirmed by BNL's physicians. The complaint alleges that BNL assigned Benjamin to "cable pulling" in an effort to force him to quit his employment and that Benjamin's assignment to "cable-pulling" activities was because of his race and in retaliation for his BAC activities.

In addition, it is alleged that McNerney made certain derogatory remarks involving Benjamin's involvement in BAC activities. The complaint alleges that BNL attempted to harm Benjamin's future at BNL by terminating three technicians who worked under Benjamin and transferring three other technicians to another department.

In July, August, and September 2003, McNerney attempted to transfer Benjamin to another position. Benjamin was given one day to consider this transfer but rejected it when he learned that it would have been "impossible" for him to perform the work required because of his physical limitations. The complaint alleges that McNerney lied to Benjamin about the physical demands of the position in an effort to persuade Benjamin to take the assignment.

On October 31, 2003, Benjamin was transferred to the position at "Tandem Van de Graff" despite his insistence that he could not perform the work required based on his physical limitations. As a result of the transfer, Benjamin resigned. When Benjamin returned to his workbench to retrieve his personal belongings, he noticed that a newspaper from a white supremacist organization was left at his workbench.

## B. Allegations Relating to Thomas

With respect to Thomas, a female African American, the complaint alleges that BNL retaliated against her for her involvement with BAC and her assistance to Tardd. In particular, Thomas alleges that after the Tardd Matter she "was very closely monitored by [BNL]." For example, Thomas (1) was "written up" for excessive use of the telephone and had her direct telephone discontinued whereas other employees were not disciplined for similar conduct; (2) was not allowed to have visitors at work while other employees were permitted visitors; and (3) received negative performance evaluations that had no basis. In addition, Thomas' supervisor, Cheryl Burke ("Burke"), a white woman, ceased talking to Thomas about potential promotions; no longer permitted Thomas

to work on an adjusted schedule; and made various race related comments. The complaint further alleges that Burke caused a hostile work environment "by manipulating one African American employee against the other;" and treated African American and Caucasian employees differently.

Both Plaintiffs allege that they complained to BNL's management and BNL failed to take meaningful steps to correct the alleged discriminatory conduct.

## C. Exhaustion of Administrative Proceedings

On or about October 17, 2003, Benjamin filed a charge of discrimination with the United States Equal Opportunity Commission (the "EEOC") against BNL. On May 10, 2004, the EEOC issued a right to sue letter to Benjamin. The complaint does not state that Thomas filed a charge with the EEOC.

On August 5, 2004, the Plaintiffs commenced this action alleging a hostile work environment and retaliation in violation of Title VII and the NYSHRL, and Section 1983 causes of action for violations of the First and Fourteenth Amendments. In addition, Benjamin alleges disability discrimination in violation of the ADA and NYSHRL.

Presently before the Court are the following motions: (1) motion by the Defendant for partial judgment on the pleadings; and (2) a cross-motion by the Plaintiffs for leave to amend the complaint.

## II. DISCUSSION

### A. The Defendant's Motion for Judgment on the Pleadings

#### 1. Applicable Law

■ The standard for reviewing a motion for judgment on the pleadings under Fed.R.Civ.P. 12(c) is analogous to the rules pursuant to Rule 12(b)(6). *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir.2001). Under Rule 12(b)(6) the motion should be granted only if "it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir.1997) (citations omitted).

#### 2. As to the Plaintiffs' Title VII Claims

■ At the outset, Thomas concedes to the validity of the Defendant's argument that her Title VII claims should be dismissed because she failed to file a her lawsuit within 90 days of receiving her right to sue letter. *See Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir.1996) ("In order to be timely, a claim under Title VII . . . must be filed within 90 days of the claimant's receipt of a right-to-sue letter."). Accordingly, Thomas' Title VII claims are dismissed in their entirety.

■ As to Benjamin, the Defendant argues that the Title VII hostile work environment and retaliation claims that predate December 21, 2002, i.e. 300 days prior to the date Benjamin filed his charge with the EEOC, should be dismissed as time-barred. The Court agrees.

It is well-settled that as a general rule, "[t]o sustain a claim for unlawful discrimination under Title VII[or] the ADA . . . a plaintiff must file administrative charges with the EEOC within 300 days of the alleged discriminatory acts." *See* 42 U.S.C. § 2000e–5(e) (Title VII); 42 U.S.C. § 12117(ADA); *Flaherty v. Metromail Corp.*, 235 F.3d 133, 136 n. 1 (2d Cir.2000). "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice,' " and "each discrim-

inatory act starts a new clock for filing charges alleging that act." *National Railroad Passenger Corporation v. Morgan,* 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Thus, because Benjamin filed his EEOC Charge on October 17, 2003, any alleged conduct that occurred prior to December 21, 2002, i.e. 300 days prior to the date that the EEOC Charge was filed, is time barred. Here, Benjamin asserts two separate causes of action, one for retaliation and one for hostile work environment. Because the statute of limitations applies differently to each of these causes action, the Court will evaluate each cause of action separately.

### a. Retaliation

The Court will first address the timeliness of Benjamin's retaliation claim. The complaint asserts that the following discrete acts occurred prior to December 21, 2002:(1) in 1996, he had not yet been promoted while thirteen of his white co-workers that were in his position had been promoted, but that he was promoted two years later; and (2) in September 2002, McNerney ordered Benjamin's supervisor to assign him to cable pulling work that Benjamin was unable to do because of a knee and back injury.

 "[Title VII] 'precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period,' even if other acts of discrimination occurred within the statutory time period." *Patterson v. County of Oneida,* 375 F.3d 206, 220 (2d Cir.2004). It is well-settled that alleged adverse employment practices such as failure to promote, failure to compensate adequately, undesirable work transfers, and denial of preferred job assignments are considered discrete acts. *Coudert v. Janney Montgomery Scott, LLC,* 2005 WL 1563325 (D.Conn.2005). Such is the case because these types of adverse employment actions are easy to identify and "each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.' " *Morgan,* 536 U.S. at 114, 122 S.Ct. 2061. These discrete acts cannot be transformed into "a single unlawful practice for the purposes of timely filing." *Id.,* at 111, 122 S.Ct. 2061. Thus, "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Id.* at 113, 122 S.Ct. 2061; *See, e.g., Lloyd v. Bear Stearns & Co. Inc.,* 2004 WL 2848536 (S.D.N.Y.2004) (holding that the plaintiff was precluded from asserting her failure to promote claim as a continuing violation).

Accordingly, insofar as these incidents relate to the retaliation claim, they are time barred.

### b. Hostile Work Environment Claim

With respect to the hostile work environment cause of action, Benjamin argues that even though several acts of discrimination occurred prior to December 21, 2002, the "continuing violation" doctrine renders all of the alleged conduct to be timely. The Court disagrees.

 The continuing violation doctrine "extends the limitations period for all claims of discriminatory acts committed under an ongoing policy of discrimination even if those acts, standing alone, would have been barred by the statute of limitations." *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 765 (2d. Cir.1998) (internal citations and quotations omitted). In this regard, a claim for hostile work environment, "will not be time barred if all acts constituting the claim are part of the same unlawful practice and at least one act falls within the filing period." *Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106, at.

Acts occurring outside the limitations period that are significantly far apart from each other are "fatal" to a continuing violation argument. *See Quinn,* 159 F.3d at 766 (holding that the plaintiff could not assert a continuing violation when there was a three year gap in time from one allegation to the next). In addition, it is well-settled in the Second Circuit that alleged failures to compensate adequately, transfers, job assignments and promotions are discrete acts and, if untimely, cannot form the basis of a continuing violation claim. *See Gross v. National Broadcasting Co. Inc.,* 232 F.Supp.2d 58 (S.D.N.Y. 2002); *Crosland v. City of New York,* 140 F.Supp.2d 300, 308 (S.D.N.Y.2001) ("It is well settled law that transfers [and] demotions . . . are all discrete acts which do not constitute a continuing violation.").

It is within this framework that the Court must analyze the discriminatory acts that allegedly occurred prior to December 21, 2002. In this regard, the Court finds that the allegations surrounding his 1996 failure to receive a promotion, and the September 2002 assignment to cable pulling work are time barred. First, more than six years elapsed between these alleged events. *See, e.g., Vernon v. Port Auth. of N.Y. & N.J.,* 154 F.Supp.2d 844, 851 (S.D.N.Y.2001) (finding a gap of 3 years, followed by a gap of 7 months between incidents is discontinuous and prevents the plaintiff from asserting a continuing violation). Second, for the reasons stated above, these acts constitute discrete acts that cannot form the basis of a continuing violation. *See Gross,* 232 F.Supp.2d 58.

Although the complaint does not specify the exact dates of the other alleged conduct, including allegations that McNerney was asking other employees questions about Benjamin's involvement with the BAC; and that McNerney was making derogatory comments about Benjamin to other employees, even if timely, the Court questions whether this alleged conduct created a workplace "permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Oncale v. Sundowner Offshore Servs.,* 523 U.S. 75, 78, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). However, because the sufficiency of the alleged conduct that occurred after December 21, 2002 was not addressed in the Defendant's motion to dismiss, the Court will not analyze this issue.

### 3. As to Benjamin's ADA claim.

Benjamin asserts that the Defendant discriminated against him on the basis of his disability by transferring him to a position that he was physically incapable of performing, thus forcing him to resign. The Defendant argues that Benjamin failed to exhaust his administrative remedies because he failed to raise the issue of disability discrimination in his EEOC charge. In particular, the Defendant argues that because Benjamin failed to mark the box on the EEOC charge for "disability"and explicitly stated in his · EEOC charge that "[he was] being subjected to discrimination and retaliation based on [his] race," he is barred from pursuing his ADA claim. The Court disagrees.

A district court only has jurisdiction to hear claims brought pursuant to the Americans with Disabilities Act that are either pled in the EEOC charge, or that are "reasonably related" to the claims in the EEOC charge. *Brown v. Coach Stores, Inc.,* 163 F.3d 706, 712 (2d Cir. 1998) (citing *Butts v. New York Dep't of Hous. Preservation & Dev.,* 990 F.2d 1397, 1402 (2d Cir.1993)). The purpose of this jurisdictional requirement is to give the

EEOC "the opportunity to investigate, mediate and take remedial action." *Stewart v. United States INS*, 762 F.2d 193, 198 (2d Cir.1985).

■ To determine whether a cause of action is "reasonably related" to the Plaintiff's EEOC charge, "the factual allegations in an EEOC charge, rather than any legal theories stated therein, should be the focus. . . ." *See Bridges v. Eastman Kodak Co.*, 822 F.Supp. 1020, 1026 (S.D.N.Y. 1993). Thus, when a claim is "simply a newly articulated cause of action that grows directly out of the factual allegations of the EEOC charge," the claim can be brought in district court. *Shull v. Rite AidCorp.*, 1997 U.S. Dist. LEXIS 7609 (S.D.N.Y.1997).

To make a proper determination as to whether or not Benjamin's claim of disability discrimination is reasonably related to his retaliation and hostile work environment claims, the Court must evaluate the relevant portions of his EEOC charge. The Charge states in part:

8. . . . Finally, in September 2002, [McNerney] ordered Neil to assign me to what is commonly called "Cable pulling" at BNL. Such duties are not part of a technician's regular assignment; they are physically demanding since it requires prolonged standing, and the ability to bend, stoop, squat, climb ladders to heights great than 5ft, lift heavy objects, and work in cramped and confined spaces. Neil Wade correctly pointed out on my behalf that on 9–24–99 the BNL doctors had issued a list of physical restrictions that precluded me from performing such strenuous activities due to past occupational injuries. . . .

9. In July 2003, Andy McNerney . . . told me about a position at the Tandem Van De Graaff for me . . . The rotating shift position that Andy rec-

ommended for me would be a totally inappropriate position for me, considering my age and known physical limitations. It was apparent that Andy chose this position for me over better possibilities that he knew existed within the division. . . .

10. . . . [McNerney] proposed that I could take the job at the Tandem with the understanding that [Tandem Supervisor] Charles Carlson would take my medical restrictions into consideration and would be willing to accommodate me. However, when I met Carlson afterward, I found him unwilling to give any clear answer regarding this issue . . . In fact, it became clear that Carlson was not even aware of my limitations, and I had to tell him about my injuries . . . [I]t was apparent that Andy is not interested in accommodating me.

11. At this juncture, I contacted Marly Tardd, who now serves as an Equal Employment Opportunity representative at NSLS . . . and he was alarmed at Andy's fixation on pushing me into an inappropriate position . . . I felt that my advocacy activities on behalf of minority employees, some of whom had filed EEOC charges against BNL, had caused a great deal of anger in management . . . I could be the target of retaliation.

13. On September 12, 2003, Neil Wade informed me that [McNerney] has made a decision concerning my transfer to another group, which he identified as the power Supply group. He further stated that [McNerney] wants me to contact Dr. Falco at the occupational clinic to schedule a medical evaluation . . . [Shirley] mentioned that the matter was discussed at length and the medical evaluation is

needed to get an update on my physical capabilities.

14. I saw Dr. Falco on September 23, 2003. He performed a full physicial exam and, after consulting my supervisor, issued a new physicial restriction form that is similar to the previous one. On September 29, 2003, [McNerney] called me to Neil Wade's office to offer me another position at the Tandem that was exactly the same as the previous offer.... Shirley claims the budget problem is the reason for the change. However the budget problem did not surface only two weeks ago—the 2004 budget shortfall has been known for some time, and cannot be used as a valid explanation.

15. I firmly believe that this matter goes beyond the Lab's financial problems. The flip-flops and contradictions outlined above show in my view a firm determination to push me into a position that will be untenable and eventually lead to my termination in retaliation for assisting African–American employees who filed EEO charges. I believe I am being subject to discrimination and retaliation on the basis of my race (African–American) in violation of Title VII....

█ Here, the Plaintiff states two incidents in his EEOC charge in which the company attempted to assign to him a position he was physically incapable of performing. The first incident occurred in October 2002 and is time barred. The second occurred in July 2003 when the Defendant attempted to place him in a position at the "Tandem." The fact that Benjamin failed to mark the box on his EEOC charge alleging disability discrimination is not dispositive of this issue. *Tsai v. Rockefeller University*, 137 F.Supp.2d 276, 284 (S.D.N.Y.2001) ("Nor does the fact that plaintiff omitted to check the appropriate boxes on her EEOC charge necessitate dismissal of her Title VII claim.").

█ The Court finds that the alleged conduct falls within the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Butts*, 990 F.2d at 1402 (internal quotation marks omitted). Accordingly, the Defendant's motion to dismiss the cause of action pursuant to the Americans with Disabilities Act on the basis that Benjamin did not exhaust his administrative remedies is denied.

### 4. As to the Plaintiffs' Section 1983 Claims for Alleged Violations of the First and Fourteenth Amendments

█ The seventh cause of action alleges that BNL deprived the Plaintiffs' of their First and Fourteenth Amendment rights in violation of § 42 U.S.C. § 1983. However, the section 1983 action is not cognizable against the Defendant because there are no allegations that it is a state or municipal entity acting under color of state law as required by 42 U.S.C. § 1983. *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir.1986); *Shaw v. Lopez*, No. 04 Civ. 0787, 2004 WL 1396698, at * 2 (D.Conn. June 17, 2004).

█ Here, the Plaintiffs contend that "upon information and belief, BSA, an independent contractor, is a private entity that is so dominated by the United States Government, the U.S. Department of Energy...." Pl. Mem. in Opp. at 17. Although, "[a] Bivens action is the non-statutory federal counterpart of a suit brought pursuant to 42 U.S.C. § 1983 and is aimed at federal rather than state officials," *Shaw*, 2004 WL 1396698, at * 2, such an action can be brought only against federal

agents in their individual capacities. *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d Cir.1994). To the extend the complaint includes a Bivens cause of action, because the complaint does not name any individual defendants the motion to dismiss this cause of action is granted.

## 5. As to the Plaintiffs' Claims under the NYSHRL

Both Plaintiffs assert causes of action under New York State Human Rights Law for race discrimination. In addition, Benjamin asserts a cause of action under the NYSHRL for discrimination based on his disability. The Defendant asserts that the Plaintiff's claims under the NYSHRL should be dismissed because BNA is a federal enclave that is not subject to New York State law. Again, the Court disagrees.

▮▮▮ A federal enclave is "a portion of land over which the United States government exercises exclusive federal jurisdiction." *Kelly v. Lockheed Martin Services Group, et al.,* 25 F.Supp.2d 1, 2 (D.Puerto Rico 1998). " 'Whether federal enclave jurisdiction, a form of federal question jurisdiction, exists is a complex question[ ]. Resting on such factors as whether the federal government exercises exclusive, concurrent or proprietorial jurisdiction over the property, when the property became a federal enclave and what the state law was at that time, whether the law is consistent with federal policy and whether it has been altered by national legislation.' " *Id.* (quoting *Celli v. Shoell,* 40 F.3d 324, 328 n. 4 (10th Cir.1994)).

The Defendant contends that BSA operates Brookhaven National Laboratory, and that the property encompassing the Laboratory was deeded from the State of New York to the United States by a Deed of Cession, dated July 17, 1933 (the "Deed"). The Defendant attached a copy of the Deed to its Answer. The Deed states in part:

I, Herbert H. Lohman, Governor of the State of New York, by the authority vested in my by Section 52 of the laws hereinafter quoted, do hereby, in the name and on behalf of the State of New York, cede, grant and release to the United States of America the jurisdiction of the state of the New York on and over the said tracts and parcels of land above described, the United States to hold, possess and exercise such jurisdiction subject to the terms and conditions of the "state law" (Laws of 1909, Ch. 59, as amended) of the state of New York, and *with the express condition that the State of New York shall retain a concurrent jurisdiction with the United States on and over the property and premises as conveyed, so far as that all civil and criminal process, which may incur under the laws or authority of the state of New York may be executed thereon in the same way and manner as if such jurisdiction had not been ceded,* except so far as such process may affect the real or personal property of the United States.

(Ans.Exh.B) (emphasis added).

▮▮▮ The Court is mindful that "a State may not legislate with respect to a federal enclave *unless it reserved the right to do so when it gave its consent to the purchase by the United States,* [and that] only state law existing at the time of the acquisition remains enforceable, not subsequent laws." *Paul v. U.S.,* 371 U.S. 245, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963) (emphasis added).

▮▮▮ In this case, it is clear that New York expressly "retain[ed] a concurrent jurisdiction with the United States on and over the property and premises as conveyed, so far as that all civil and criminal process, which may incur under the laws

or authority of the state of New York may be executed thereon in the same way and manner as if such jurisdiction had not been ceded. . . . " The Court does not agree with the Defendant's limited interpretation of the word "process" namely that "[t]he only express exception to the Federal government's complete control and jurisdiction over the BNL enclave is reserved for the service of criminal and civil process by the State of New York." Def. Mem. in Supp. at 13. Rather, the Court concludes that the word "process" is defined as "[t]he proceedings in any action or prosecution." Black's Law Dictionary, 8th Ed. At 1242. Thus, the Court finds because that the State of New York expressly stated that "the laws or authority of the state of New York may be executed thereon in the same way and manner as if such jurisdiction had not been ceded . . . .," the motion to dismiss the New York State Human Rights claims on the ground that the Defendant is a federal enclave is denied.

To summarize, the Defendant's motion for judgment on the pleadings is granted to the extent that: (1) Thomas' Title VII and NYSHRL causes of action on the basis of race discrimination are dismissed in their entirety; (2) Benjamin's Title VII and NYSHRL claims for race discrimination, retaliation, and hostile work environment, are limited to those allegations that occurred after December 21, 2002; and (3) the Plaintiffs' Section 1983 / Bivens claims are dismissed in their entirety. Conversely, the Defendant's motion for judgment on the pleadings seeking to dismiss the claims of discrimination based on disability is denied in its entirety.

**B. As to the Plaintiffs' Cross–Motion to Amend the Complaint.**

The Plaintiffs filed a cross motion pursuant to Fed.R.Civ.P. 15(a) to amend the complaint. In support of this cross-motion, the Plaintiffs annexed a proposed amended complaint that contains nearly identical factual allegations and causes of action. In addition, the amended complaint also contains a cause of action pursuant to 42 U.S.C. § 1981. The Defendant objects to the amended complaint for the same reasons it moved to dismiss the complaint. However, the Defendant does not offer any arguments in opposition to the newly asserted Section 1981 cause of action.

■■■ Leave to amend "shall be freely given when justice so requires." Fed. R.Civ.P. 15(a). Leave to amend should only be denied because of undue delay, bad faith, futility, or prejudice to the nonmoving party, and the decision to grant or deny a motion to amend rests within the sound discretion of the district court. *Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995).

■■■ If an amendment is futile, "it is not an abuse of discretion to deny leave to amend" to the moving party. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993). A determination that a proposed claim is futile is made under the same standards that govern a motion to dismiss under Rule 12(b)(6). *Randolph–Rand Corp. of New York v. Tidy Handbags, Inc.,* No. 96 Civ. 1829, 2001 WL 1286989, at *5 (S.D.N.Y., Oct. 24, 2001) (An amendment is futile "if the proposed amended complaint would be subject to 'immediate dismissal' for failure to state a claim or on some other ground." (quoting *Jones v. New York Div. of Military & Naval Affairs,* 166 F.3d 45, 55 (2d Cir. 1999))).

■■■ The Court has already addressed all of the causes of action contained in the proposed amended complaint except for those allegations arising under 42 U.S.C. § 1981. Turning to Section

1981, the Court notes that "[t]he rights protected by [Section 1981] are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c). So that, a cause of action pursuant to Section 1981 can only be maintained against a defendant acting in a nongovernmental capacity. Thus, the Plaintiffs are granted leave to amend their complaint to add a Section 1981 cause of action insofar as it is asserted against the Defendant in a nongovernmental capacity. *King v. United States Postal Serv.*, 01 Civ. 8876(GEL), 2002 WL 1067825 at *3 (S.D.N.Y. May 29, 2002) ("[Section] 1981 by its own terms explicitly protects equal contract rights only against impairment by nongovernmental discrimination and impairment under color of State law." (internal quotation marks and citation omitted)).

Accordingly, the Plaintiffs' motion for leave to amend the complaint is granted in part. In addition, to the above mentioned Section 1981 cause of action, the amended complaint shall be limited as follows: As to Benjamin, the amended complaint can assert the following causes of action: (1) retaliation pursuant to Title VII limited to those incidents occurring after December 21, 2002; (2) hostile work environment limited to those incidents occurring after December 21, 2002; (3) retaliation pursuant to the New York State Human Rights Law for those incidents occurring after December 21, 2002; (4) hostile work environment pursuant to the New York State Human Rights Law for those incidents occurring after December 21, 2002; (5) discrimination based on the Americans with Disabilities Act; (6) race discrimination pursuant to 42 U.S.C. § 1981.

With regard to Thomas, the amended complaint shall be limited to a cause of action based on race discrimination pursuant to 42 U.S.C. § 1981. The Plaintiffs are directed to serve and file a copy of their amended complaint within 30 days from the date of this Memorandum of Decision and Order.

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the Defendant's motion pursuant to Fed.R.Civ.P. 12(c) for partial judgment on the pleadings is granted in part and denied in part in that the Defendant's motion for judgment on the pleadings is granted to the extent that: (1) Thomas' Title VII and NYSHRL causes of action on the basis of race discrimination are dismissed in their entirety; (2) Benjamin's Title VII and NYSHRL claims for race discrimination, retaliation and hostile work environment, are limited to those allegations that occurred after December 21, 2002; and (3) the Plaintiffs' Section 1983 / Bivens claims are dismissed in their entirety. Conversely, the Defendant's motion for judgment on the pleadings seeking to dismiss the claims of discrimination based on disability is denied in its entirety; and it is further

**ORDERED,** that the Plaintiffs' cross-motion pursuant to Fed.R.Civ.P. 15(a) for leave to amend the complaint is granted in part and denied in part in that the amended complaint may include a cause of action by both Plaintiffs pursuant to 42 U.S.C. § 1981 insofar as it is asserted against the Defendant in a nongovernmental capacity; and as to Benjamin, the amended complaint can assert the following causes of action: (1) retaliation pursuant to Title VII limited to those incidents occurring after December 21, 2002; (2) hostile work environment limited to those incidents occurring after December 21, 2002; (3) retaliation pursuant to the New York State Human Rights Law for those incidents occurring after December 21, 2002; (4) hostile work environment pursuant to the

New York State Human Rights Law for those incidents occurring after December 21, 2002; (5) discrimination based on the Americans with Disabilities Act; and it is further

**ORDERED,** that the Plaintiffs are directed to serve and file the amended complaint, limited to the above mentioned causes of action, within 30 days from the date of this Memorandum of Decision and Order.

**SO ORDERED.**